**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

VISION WORKS IP CORP.,
Plaintiff,

v.

BENDIX COMMERCIAL VEHICLE SYSTEMS LLC,
Defendant.

Civil Action No. 7:26-cv-00377

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Vision Works IP Corp. (hereinafter, "Plaintiff" or "Vision Works") files this Complaint for patent infringement against Defendant Bendix Commercial Vehicle Systems LLC (hereinafter, "Bendix" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patent (the "Asserted Patent") issued by the United States Patent and Trademark Office ("USPTO"):

| | U.S. Patent No. | Reference |
|---|---|---|
| 1. | 10,410,520 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10410520 |

2. Plaintiff seeks monetary damages.

## PARTIES

3. Vision Works is a corporation organized and existing under the laws of the State of Washington and maintains its principal place of business at 202 Mineral Road N., Mineral, Washington, 98355 (Lewis County).

4. Based upon public information, Bendix is a limited liability company organized under the laws of the State of Delaware.[1]

5. Based upon public information, Bendix has its principal place of business at 35500 Chester Road, Avon, Ohio 44011.[2]

6. Based upon public information, Bendix maintains a manufacturing site located at 90 Finegan Road, Del Rio, Texas 78840.[3]

7. Based upon public information, Bendix may be served through its registered agent, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.[4]

**JURISDICTION AND VENUE**

8. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

9. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

10. Bendix is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due to at least its substantial business in this Judicial District, in the State of Texas, and in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other

---

[1] *See* https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx (search for "Bendix"; last visited June 25, 2026)

[2] *See* https://www.bendix.com/en/about-us/ (last visited June 25, 2026)

[3] *See* https://www.bendix.com/en/contacts/bendix-locations/ (last visited June 25, 2026)

[4] *See* https://comptroller.texas.gov/taxes/franchise/account-status/search/12637923678 (last visited June 25, 2026)

persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state, in this District, and in the United States.

11. Specifically, Bendix intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District, in the State of Texas, and in the United States, directly, through intermediaries, by contributing to and through the inducement of third parties, and offers and sends its products and services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

12. On information and belief, Bendix has significant ties to, and presence in, the State of Texas and this District, making venue in this Judicial District both proper and convenient for this action.

13. On information and belief, Bendix manufactures, markets, distributes, and places into the stream of commerce Bendix motorcycles and related products with the expectation that such products are to be sold in Texas and in this District.

14. More specifically, Bendix directly and/or through its intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and services in the United States, the State of Texas, and in this District. Defendant has approximately 2321 authorized sellers and sales representatives that offer and sell products identified in this Complaint throughout the United States, including in this state and in this Judicial District, and to consumers throughout this Judicial District, such as in its authorized dealerships in this District and State.[5]

15. Bendix maintains an authorized dealer network in Texas, including dealers

---

[5] *See* https://b2bendix.com/US/en/USD/storefinder (search for "Texas"; last visited July 9, 2026)

authorized to sell its products that are located in or serving the Western District of Texas, including dealerships in the cities of Midland, Odessa, Killeen, Round Rock, Temple, Austin, Robinson, and Waco.[6]

16. Therefore, venue is proper in this District pursuant to 28 U.S.C. §1391(b)(3) and (c)(3).

17. Upon information and belief based upon public information, Bendix owns and controls its global marketing website, www.bendix.com, which is used to promote its products sold in the United States, including in this state and in this District and to control the marketing, promotion, and branding of its products sold in this state and in this District.

**BACKGROUND OF THE ASSERTED PATENT**

18. U.S. Patent No. 10,410,520 (the "'520 patent") was filed on October 24, 2017, and it claims systems and methods for a communication system comprising a pointable range finder to calculate a distance between the vehicle and an object, a recorder for recording a status of the vehicle and a control device. '520 patent, Abstract. The '520 patent is a continuation of the '821 patent, and ultimately claims priority to provisional application No. 60/616,400, which was filed on October 5, 2004. The '520 patent shares a specification with a number of patents (the "Vehicle Control and Safety Patents").

19. In general, each invention of the claims of the '520 patent "relates generally to methods and devices for detecting absolute levels of longitudinal, lateral and vertical acceleration within moving vehicles, and to a variety of systems and methods for generating responses to changes in these absolute levels." *Id.* at 1:38-42.

---

[6] *See* FN 5.

**THE TECHNICAL PROBLEMS IN VEHICLE CONTROL AND SAFETY SYSTEMS IN OCTOBER 2004.**

20. The Vehicle Control and Safety Patents discuss certain prior art systems and the state of vehicle monitoring and control systems at great length. As the specification notes, in October of 2004, there was a "wide variety of applications within modern motor vehicles [for the use of, for instance, accelerometers]." '520 patent, at 1:46-47. Accelerometers are devices that are extremely sensitive to any gravitational force to which they are not perpendicular, leading them to be known as, for instance, "tilt sensors" in the gaming and robotics industries. '520 patent, at 2:4-7.

21. The specification of the Vehicle Control and Safety Patents goes on to explain that "[t]he most common of these are impact and collision sensors used to deploy front and side impact airbags in modern passenger cars and trucks." '520 patent, at 1:47-49. The '520 patent explains that "[i]n applications that depend on sudden and drastic deceleration, the presence of gravity is of little consequence and will not affect the implementation of the accelerometer." *Id*. at 1:50-52.

**THE CLAIMED ADVANCES OF THE VEHICLE CONTROL AND SAFETY PATENTS.**

22. The specification makes clear that, in the context of the Vehicle Control and Safety patents, "'acceleration' refers to either or both positive acceleration and negative acceleration (sometimes called "deceleration'), while 'deceleration' refers to only negative acceleration." '520 patent, at 3:23-26.

23. The Vehicle Control and Safety Patents are directed to inventive ways to monitor and control vehicles to improve driver safety through the novel use of accelerometers, coupled with gyroscopes and other sensors, to better warn of potential collisions and to prevent rollovers. More specifically, the Vehicle Control and Safety Patents are directed to "methods and devices for detecting absolute levels of longitudinal, lateral and vertical acceleration within moving vehicles, and to a variety of systems and methods for generating responses to changes in these absolute

level" through the employment of accelerometer-gyroscopic other sensors. '520 patent, at 1:38-42. In simple terms, "[t]he present invention provides systems and methods for warning drivers of other vehicles of any possibility that a subject vehicle will brake and/or that the following vehicle may need to decelerate." '520 patent, at 3:27-30.

**THE '520 PATENT SPECIFICATION AND DISCLOSURES**

24. The '520 patent is directed to inventive ways to monitor and control vehicles to improve driver safety through the novel use of pointable range finders to calculate a distance between a vehicle and an object, a recorder for recording a status of the vehicle and a control device. '520 patent, Abstract. In simple terms, "[t]he present invention provides systems and methods for warning drivers of other vehicles of any possibility that a subject vehicle will brake and/or that the following vehicle may need to decelerate. This warning occurs earlier than warnings provided by traditional rear brake warning systems." '520 patent, at 3:27-32.

25. The specification generally discloses eight examples for the use of the claimed inventions. *See* '520 patent, at 8:5-30:10 (describing examples of eight systems that can be deployed using the technologies of the Vehicle Control and Safety System Patents).

26. The '520 patent utilizes a communication system for a vehicle that comprises a pointable range finder to calculate a distance between a vehicle and an object, a recorder that records an operation status of the vehicle, and a control device coupled to the range finder and the recorder. The range finder sends a signal to the control device that corresponds with the vehicle's distance from the object, and the control device operates the recorder, based upon the signal sent from the range finder in order to indicate whether the vehicle has entered a safe-zone threshold with respect to the object based on the vehicle's speed and distance from the object. '520 patent, at 3:58-66.

27. The specification provides clear disclosure of a range finder, recorder, and control

device, among components, in Figures 14-16, which are employed in the claimed collision warning systems, as discussed below, and are "schematic view[s] illustrating the components of" the rear-end collision avoidance system and communication system. '520 patent, at 6:24-32.

28. With reference to Figure 14, the communication system 1400 comprises a range finder 1485, a vehicle speed sensor (VSS) 1410, a control device 1445, and a response device activation circuit 1475. The VSS 1410 emits a period function with a frequency corresponding to the speed of the vehicle and sends a signal to the control device 1445. The range finder 1485 calculates a distance from the vehicle to an object and sends a signal to the control device 1445. Based upon the signal from the VSS 1410 and the range finder 1485 the control device 1445 sends a signal to the response device activation circuit 1475, which operates a response device in a manner dependent upon the signal sent from the control device 1445. '520 patent, at 15:35-50.




**Fig. 14**

'520 patent.

29. As also shown in Figure 14, in some embodiments, the communication system 1400 comprises a speed control system activation circuit 1465 coupled to the control device 1445. In these embodiments, after receiving a signal the VSS 1410 and the range finder 1485, the control device 1445 sends a signal to the speed control system activation circuit 1465, which is able to control the speed of the vehicle in a manner dependent on the signal from the control device 1245. For example, in some embodiments, the control device 1445 activates the speed control system activation circuit 1465 to activate the braking system in order to slow the vehicle in order to increase the space between the vehicle and a lead vehicle. In some embodiments, the control device 1445 activates the speed control system activation circuit 1465 to activate the braking system in order to maintain a safe distance between the following vehicle and the lead vehicle. In further embodiments, the control device 1445 activates the speed control system activation 1465 to increase the speed of the following vehicle in order to maintain a consistent distance between the following vehicle and the lead vehicle. The control device 1445 can also activate the speed control system activation circuit to increase the speed of the leading vehicle based on an excessive closure rate of a following vehicle. ’520 patent, at 17:45-18:2.

30. Additionally, the communication system 1400 can comprise the speed control system activation circuit 1465 and a response device activation circuit 1475 that is coupled to the control device 1445. ’520 patent, at 18:3-6.

31. With reference to Figure 15, the communication system 1500 comprises a vehicle speed sensor (VSS) 1510, a control device 1545, and a warning device activation circuit 1595. The VSS emits a periodic function with a frequency corresponding to a speed of the vehicle and sends a signal to the control device 1545. The control device 1545 processes the signal it receives from the VSS 1510 and determines whether to activate a warning device. The control device 1545

is coupled to and sends a signal to the warning device activation circuit 1595, which activates the warning device in a manner based on a signal from the control device 1545. The control device 1545 sends a signal to the warning device activation circuit 1595 to activate a warning device after the vehicle reaches a predetermined rate of speed. For example, the control 1545 sends a signal to the warning device activation circuit 1595 when the vehicle reaches a speed of 35 miles per hour. '520 patent, at 18:35-55.




**Fig. 15**

'520 patent

32. As further shown in Figure 15, the communication system further comprises a range finder 1585. The range finder 1585 calculates a distance from the vehicle to an object and sends a signal to the control device 1545. The range finder 1585 calculates the distance from the vehicle to an object and based upon the signal from VSS 1510 and the range finder 1585, the control device 1545 sends a signal to the warning device activation circuit 1595. '520 patent, ay 19:4-14.

33. The range finder 1585 can calculate the distance from a vehicle to a leading vehicle. The control device 1545 sends a signal to the warning activation circuit 1595, which activates the warning device based upon the vehicle's speed and the distance of the vehicle from the leading vehicle. The range finder 1585 can be pointable in an upward, diagonally upward, or in a direction to the side of the vehicle to calculate the distance between a vehicle and an object, such as a stoplight, stop sign, intersection, or area of congestion. '520 patent, at 19:15-38.

34. With reference to Figure 16, the communication system 1600 comprises a pointable range finder 1685, a recorder operation circuit 1610 and a control device 1645. The range finder 1685 functions similarly to the range finder described above in Figure 14 and calculates the distance between a vehicle and an object, such as a leading vehicle. '520 patent, at 20:27-34. The range finder 1685 may comprise an accelerometer to determine the direction and degree of turn of the vehicle when the leading vehicle is turning. '520 patent, at 20:51-53.




Fig. 16

'520 patent.

35. The control device 1645 receives a signal from the VSS corresponding to a speed of the vehicle and a signal from the range finder 1685 corresponding to the vehicle's distance from the object. After receiving the signal from the VSS 1610 and the range finder 1645, the control device 1645 compares the values to the programmed constant and sends a signal to the recorder operation circuit 1670 and/or the speed control activation circuit. If the vehicle is an unsafe distance from the object, a signal to the recorder operation circuit 1670 will record the instance. The communication system 1600 also comprises a response device activation circuit 1475, as discussed above for Figure 14. '520 patent, at 21:27-37, 40-43.

36. Also shown in Figure 16, the communication system 1600 comprises vehicle speed sensor (VSS) 1610. VSS 1610 emits a periodic function with a frequency corresponding to the speed of the vehicle and sends a signal to the control device 1645. Based on the signal from VSS 1610 and the range finder 1685, the control device 1645 sends a signal to recorder operation activation circuit 1610, which operates the recorder based on the signal sent from the control device 1645, as discussed above. Through this, the communication system 1600 can record additional conditions surrounding the safe zone encroachment event, such as the traveling and closing speed of the vehicle. '520 patent, at 22:4-28. A speed control activation circuit 1665 may also be coupled to the control device 1645; doing so allows the control system activation circuit 1665 to control the vehicle's speed based on the signal sent from the control device 1645. *Id.* at 22:20-28.

**THE ACCUSED PRODUCTS**

37. Based upon public information, Defendant owns, operates, advertises, and/or controls the website www.bendix.com through which it advertises, sells, offers to sell, provides and/or educates customers about its products.[7]

---

[7] *See, e.g.,* https://www.bendix.com/en/products/ (last visited July 9, 2026)

38. Defendant offers at least the following (hereinafter, the "Accused Products") that are incorporated into vehicles in a manner that infringes one or more claims of the Asserted Patent:

- Bendix® Wingman® Fusion™ Advanced Driver Assistance System

System Components

The main components used in the Bendix ® Wingman® Fusion™ system are the Bendix® ESP® EC-80 ™ Controller; the Bendix ® Wingman® FLR-20 ™ radar; the Bendix™ AutoVue® FLC-20 ™ Camera (powered by the Mobileye ® System-on-Chip EyeQ ® processor with state-of-the-art-vision algorithms); the Bendix ® Driver Interface Unit (DIU ™), or OEM dash display; the SafetyDirect ® by Bendix CVS Processor; and the vehicle's telematics system.




The Bendix Wingman Fusion radar locates and tracks moving vehicles. The radar is located at the front of your vehicle – either on the bumper or just behind it on a cross-member. When located behind the bumper, in some cases the unit may also be behind a protective covering that allows the radar signal to pass through. The camera is located on the windshield inside the wiper pattern.

**Figure 1**

Source: BENDIX Wingman Fusion Operator's Manual (© 2018)
(https://www.manualslib.com/manual/1932932/Bendix-Wingman-Fusion.html?page=13#manual - last visited: July 9, 2026)

39. The Accused Products feature "Enhanced Autonomous Emergency Braking" (AEB), "Enhanced Stationary Vehicle Braking" (SVB), "Multi-lane Autonomous Emergency Braking" (AEB), "Active Cruise with Braking" (ACB), and "Highway Departure Warning and Braking

(HDW/HDB)" which practice the inventions of the Asserted Patent.[8]

**Bendix® Wingman® Fusion™ FLR-21™ Radar Sensor**




**Figure 2**

Source: Service Data for Bendix® Wingman® Fusion™ FLR-21™ Radar Sensor (SD-61-4963 © 2022) (https://n0c357rmy1njbuit2friqwu.blob.core.windows.net/documents/jvMAIF3AI0EBhB_SD_61_4963_US_006.pdf - last visited: July 9, 2026)

40. The Accused Products infringe one or more claims of the Asserted patent as described below.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,410,520

41. Plaintiff re-alleges and incorporates by reference each of paragraphs 1-40 above as though fully set forth in their entirety.

42. U.S. Patent No. 10,410,520 (the "'520 patent") was issued on September 10, 2019 after full and fair examination by the USPTO of Application No. 15/792,203 which was filed on October 24, 2017. The '520 patent is entitled "Absolute Acceleration Sensor For Use Within Moving Vehicles." *See* '520 patent at p.1.

43. Vision Works owns all substantial rights, interest, and title in and to the '520 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

[8] *See* https://www.bendix.com/en/products/advanced-driver-assistance-systems/bendix-wingman-fusion%E2%84%A2/ (last visited July 9, 2026)

44. Vision Works or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the ’520 patent.

## SUBJECT MATTER ELIGIBILITY

45. The claims of the ’520 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve vehicle safety by providing a system for communicating information about the speed of a vehicle and about its distance to a nearby vehicle.

46. The relevant ’520 patent claims are directed to physical devices that employ pointable range finders, recorders and control devices coupled to the range finder and recorder to calculate the distance of vehicles from objects, record the vehicle’s operation status if the vehicle enters a safe-zone threshold with respect to the objects that is dynamic, *i.e.,* increases as the vehicle speed increases once the vehicle reaches a predetermined speed. The invention improves the prior art by using a speed-adaptive safe-zone threshold that automatically increases with vehicle speed and records unsafe following distance events, including to a database in addition to providing real-time warnings.

47. The written description of the ’520 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

## INFRINGEMENT OF THE ’520 PATENT

48. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the ’520 patent, either literally or under the doctrine of equivalents,

because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises the Bendix® Wingman® Fusion™ Advanced Driver Assistance System (the "Wingman Fusion System"). *See* Figure 1 and Figure 2, above.

49. Based upon public information, the Wingman Fusion System infringes one or more claims of the '520 patent.

50. Based upon public information, the Wingman Fusion System meets each and every step of at least Claim 12 of the '520 patent, either literally or equivalently. *See* **Exhibit A** (Evidence of Use Chart – U.S. Patent No. 10,410,520).

51. Specifically, Defendant's provision of the Wingman Fusion System has infringed, at least Claim 12 of the '520 patent because it provides a method for determining a safe distance of a vehicle from an object by measuring the speed of the vehicle, calculating a distance between the vehicle and the object, and determining a safe distance from the vehicle and the object based upon a pre-set value depending on said distance and the vehicle. *See* Exhibit A.

52. To the extent that Defendant was not the only direct infringer of one or more claims of the '520 patent, it instructed its customers on how to use the Wingman Fusion System in ways that infringed said claims through its support and sales activities. *See* Exhibit A.

53. Based upon public information, Defendant specifically intended its customers to use its products and services in such a way that infringed one or more claims of the '520 patent by, at a minimum, providing and supporting the Wingman Fusion System and instructing its customers on how to use it in an infringing manner, at least through information available on Defendant's website including information brochures, promotional material, and contact information.[9]

54. Defendant's aforesaid activities have been without authority and/or license from

[9] *See* FN 7

Plaintiff.

55. Vision Works has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Vision Works in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **JURY DEMAND**

56. Plaintiff demands a trial by jury on all issues so triable by right.

## **PRAYER FOR RELIEF**

57. Plaintiff respectfully requests the following relief:

A. An adjudication that one or more claims of the Asserted Patent has been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

B. An award of damages to be paid by Defendant adequate to compensate Plaintiff Defendant's past infringement, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Defendant's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

C. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

D. That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

E. Any further relief that this Court deems just and proper.

Dated: September 11, 2026

Respectfully submitted,

*/s/ James F. McDonough, III*

James F. McDonough, III (GA 117088)*
Jonathan R. Miller (GA 507179)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

**Attorneys for *Plaintiff* *VISION WORKS IP CORP.***

* Admitted to the Western District of Texas